IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TAMMY HERSCHELL,                )
                                )
           Plaintiff,           )
                                )   CIVIL ACTION
v.                              )
                                )   No. 09-4052-JAR-GBC
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security,)
                                )
           Defendant.           )
_____)

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court recommends judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision.

**I.   Background**

Plaintiff applied for DIB and SSI on June 28, 2005 alleging disability since May 24, 2005. (R. 19). The applications were denied initially and upon reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). Id. Plaintiff's request was granted, and plaintiff appeared with

counsel for a hearing before ALJ William G. Horne on February 19, 2008. (R. 19). At the hearing, testimony was taken from plaintiff and from a vocational expert. (R. 19, 629-77). The ALJ issued a decision on April 18, 2008, finding that plaintiff is able to perform work existing in significant numbers in the economy and is, therefore, not disabled within the meaning of the Act. (R. 19-30). Plaintiff disagreed, and sought, but was denied Appeals Council review of the ALJ's decision. (R. 8-10, 14-15). Therefore, the ALJ's decision is the Commissioner's final decision. Id. at 8; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff seeks judicial review.

**II. Legal Standard**

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.

1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. § 416.920 (2008); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under

a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 416.920. This assessment is used at both step four and step five of the sequential evaluation process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Here, plaintiff claims the ALJ erred at step three of the sequential evaluation process by finding that the severity of her

impairments does not meet Listings 1.02, 1.03, 12.02, or 12.04, and erred in evaluating the opinion of plaintiff's treating physician, Dr. Listerman.  The Commissioner notes that at the hearing plaintiff admitted her condition does not meet any listing, argues substantial evidence supports the ALJ's step three finding, and argues that the ALJ properly evaluated Dr. Listerman's opinions.  In her reply brief, plaintiff does not address the "Listing" argument, but argues (1) that the ALJ failed to specify the weight accorded Dr. Listerman's opinion, (2) that a reviewing court may neither speculate regarding the basis for the Commissioner's decision nor provide post hoc rationalization to justify the decision, and therefore (3) remand is necessary for the Commissioner to explain the weight given Dr. Listerman's opinion.  The court addresses each argument in the order of the sequential evaluation process, does not find the errors alleged by plaintiff, and recommends the decision below be affirmed.

**III. Step Three**

Plaintiff claims the evidence shows she is unable to ambulate effectively, and therefore she meets Listings 1.02 and 1.03; that she has marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace, and therefore meets Listings 12.02 and

12.04. (Pl. Br. 28-34). The Commissioner pointed out that plaintiff admitted at the hearing that her condition does not meet any Listing. Nevertheless, the Commissioner argues that, as the ALJ found, plaintiff's condition does not meet Listings 1.02 and 1.03 because the evidence demonstrates that plaintiff was able to ambulate effectively within twelve months after her ankle surgery, and that plaintiff's condition does not meet Listings 12.02 and 12.04 because she does not meet the paragraph "B" criteria of those listings.

At the beginning of the hearing, the ALJ asked plaintiff's counsel if he wanted to make any opening statement. (R. 635). Counsel stated, "Yes, Your Honor. Thank you. It does not appear that Ms. Herschell has anything in the record that would indicate a listing level of impairment. However, we believe that she is disabled on other grounds. Namely the inability to sustain work on a regular, continuous basis as in accordance with SSR 96-8p." Id. Toward the end of the hearing, counsel indicated that he did not believe plaintiff was off of her feet for twelve months when she broke her ankle, but that he could not provide the exact dates to the ALJ from his notes or from the records at the hearing. (R. 675-76). He explained to the ALJ, "I would like to take a look at that and if that is indicated I would certainly provide a memo to bring that to your attention if the record indicates that she has a listing level impairment. Otherwise, if

she does not, then my original theory of the case offered prior to testimony still stands." (R. 676). The ALJ gave counsel ten days after the hearing to provide the memo. Id. Ultimately, counsel sent a letter dated February 29, 2008, in which he stated "The record does not appear to demonstrate a listing level impairment." (R. 35). Therefore, the error, if any, in failing to find plaintiff's condition meets or equals a listing was invited by plaintiff, and the invited error doctrine would preclude plaintiff from securing a remand on that basis.

The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error. Eateries, Inc. v. J.R. Simplot Co., 346 F.3d 1225, 1229 (10th Cir. 2003); John Zink Co. v. Zink, 241 F.3d 1256, 1259 (10th Cir. 2001). The Tenth Circuit has applied the invited error doctrine to proceedings before an administrative agency. St. Anthony Hosp. v. Dep't of Health and Human Servs., 309 F.3d 680, 696 (10th Cir. 2002)(refusing to grant the requested relief because the hospital had invited the error, if any). In a case with facts similar to those presented here, a court is this district has applied the invited error doctrine to bar the plaintiff from asserting that her condition met a listing. Tracy v. Astrue, 518 F. Supp. 2d 1291, 1305-06 (D. Kan. 2007).

In Tracy, plaintiff's counsel responded to a specific question at the ALJ hearing and asserted that he did not think plaintiff's condition met a listing. Id. at 1305. Nevertheless, before the district court plaintiff argued that the record contained a medical source statement indicating that plaintiff's condition met Listings 12.04 and 12.06. Id. The court noted counsel's unambiguous assertion at the hearing that he did not believe plaintiff's condition met a listing, and applied the invited error doctrine to bar a contrary assertion before the court. Id., 518 F. Supp. 2d at 1306.

Here, counsel stated that he did not believe plaintiff's condition met a listing. Later, when the ALJ pressed plaintiff regarding the date she was released by her doctor for full weight-bearing on her ankle, counsel expressed reservations because he could not immediately locate the date in his notes or in the records available at the hearing. Subsequently, counsel provided a memo admitting plaintiff does not meet a listing, and in the decision the ALJ specifically noted that plaintiff was "cleared for full weight-bearing on November 18, 2005," and "was returned to effective ambulation within a 12 month period." (R. 26). This case is in all material respects identical to Tracy: counsel effectively expressed his belief to the ALJ that plaintiff's condition does not meet a listing. The court finds that the invited error doctrine should be applied to bar any

-8-

assertion that plaintiff's condition meets or equals a Listed impairment.

Moreover, the court finds that substantial evidence in the record supports the ALJ's finding that plaintiff's condition does not meet or equal a listed impairment. Plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet <u>all</u> of the specified medical criteria' contained in a particular listing." <u>Riddle v. Halter</u>, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990) (emphasis in <u>Zebley</u>)). "The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'" <u>Zebley</u>, 493 U.S. at 532-33(emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153 (1987). "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read

expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

The ALJ determined in this case that plaintiff's condition does not meet or equal Listings 1.02 or 1.03 because she does not have "an inability to ambulate as required by Listings 1.02 or 1.03." (R. 22). In that regard, the ALJ found that, "The claimant presented to Dr. Wertzberger for several post operative treatments and was cleared for full weight-bearing on November 18, 2005. Thus, the claimant was returned to effective ambulation within a 12 month period." (R. 26).

Among other criteria, Listing 1.02 and Listing 1.03 both require "inability to ambulate effectively." 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 1.02A, 1.03. "Inability to ambulate effectively" is defined as, "an extreme limitation of the ability to walk; . . . having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id. § 1.00B2b(1).

> *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities,

>     such as shopping and banking, and the inability to
>     climb a few steps at a reasonable pace with the use of
>     a single hand rail.

Id. § 1.00B2b(2).

Plaintiff asserts that her condition meets the criteria of both listings, but she does not show how the evidence establishes that she has the "inability to ambulate effectively" as defined in the regulations. Her only argument on point is her hearing testimony that her ankle affects her ability to walk and move about; that it will "give out" and "turn sideways" to such a degree that she nearly falls down. (Pl. Br. 30). However, even this argument does not demonstrate the "extreme limitation of the ability to walk" contemplated by the regulations. Plaintiff's testimony was that sometimes her ankle interferes with her ability to walk, "it comes and goes," and that "A couple of months ago it acted up again and as I would walk it would give out and I would kind of, it would turn sideways and I would kind of like almost fall." (R. 643). This testimony specifically acknowledges that whatever happened, happened while plaintiff was in fact walking, and that it did not cause her to fall, but that she would "kind of like almost fall." Other than the time after she broke her ankle and before she was released to full weight-bearing, the record contains no evidence whatever of an inability to ambulate effectively. Moreover, the ALJ specifically found that plaintiff's allegations "concerning the intensity,

-11-

persistence and limiting effects of these symptoms (from her medically determinable impairments) are not credible." (R. 24). Plaintiff does not allege error in the credibility finding, so it is fruitless to appeal to her testimony to support an assertion of ineffective ambulation. Plaintiff does not point to record evidence suggesting she is unable to ambulate effectively and, therefore, cannot show that the ALJ erred in finding she does not meet or equal Listings 1.02 or 1.03. The court may not read the criteria expansively to find the listings are met or equaled.

With regard to mental impairments, the ALJ determined that plaintiff does not meet or equal the Listings because she does not meet either the "paragraph B" or the "paragraph C" criteria of the Listings:[1]

> Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied. The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(R. 23).

---

[1] Although the ALJ did not specifically discuss Listing 12.02, he discussed Listing 12.04, and the paragraph B and paragraph C criteria for the two listings are identical in all respects material to this opinion. Compare 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.02 B & C, with 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.04 B & C. Thus, if plaintiff's condition does not meet or equal Listing 12.04 it necessarily does not meet or equal Listing 12.02.

-12-

Plaintiff argues that she has marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace and, therefore, meets or equals Listing 12.02 and Listing 12.04. (Pl. Br. 32-34). The evidence upon which she bases her argument consists of: reports of irritability; inability to get along with her son, and yelling at each other; instances of rages; reported difficulty thinking and understanding; emotional lability; disturbances in mood; and reported difficulties in concentration. (Pl. Br. 32-33). The regulations define a "marked" limitation as "more than moderate but less than extreme," and explain that "the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively and on a sustained basis." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00C. Plaintiff does not even attempt to explain how the evidence she cites demonstrates to more than a moderate degree that her mental impairments interfere seriously with her ability to function independently, appropriately, effectively and on a sustained basis. It is plaintiff's burden to establish that her condition meets or equals a listing. The mere presence of emotional and mental symptoms is insufficient to establish that the requisite criteria are met. Plaintiff has not met her burden to show error in the ALJ's step three findings.

**IV. Evaluation of Dr. Listerman's Opinion**

Plaintiff claims the ALJ erred in evaluating the opinion of her treating physician, Dr. Listerman; specifically (1) that the ALJ failed to specify the weight accorded Dr. Listerman's opinion, (2) that a reviewing court may neither speculate regarding the basis for the Commissioner's decision nor provide post hoc rationalization to justify the decision, and therefore (3) remand is necessary for the Commissioner to explain the weight given Dr. Listerman's opinion.  The Commissioner points out that Dr. Listerman provided three reports regarding plaintiff's capabilities:  (1) A telephonic report on August 8, 2007 (R. 565); (2) a letter dated February 28, 2008[2] (R. 576-82); and, (3) an undated letter sent thereafter.[3]  (R. 597-603).  The Commissioner argues that the ALJ found Dr. Listerman's first opinion more persuasive that the second or third opinions because it reflected plaintiff's abilities as shown by the rest of the evidence and because the second and third opinions were inconsistent with the first opinion, with Dr. Listerman's

---

[2]The List of Exhibits states that the second opinion is a "Medical Report dated 2/28/2008."  (R. 5).  The letter written by Dr. Listerman is undated, but was faxed to the ALJ with a letter written for plaintiff's counsel on February 29, 2008, and contains a fax header dated "FEB-29-2008."  (R. 574-82).

[3]The list of Exhibits states that the third opinion is a "Medical Report dated 3/12/2008."  (R. 5).  Although this letter is also undated, it was faxed to the ALJ with a letter written for plaintiff's counsel on March 12, 2008, and contains a fax header dated "MAR-12-2008."  (R. 595-603).

-14-

treatment records, and with the other record evidence. He argues that the ALJ gave specific, legitimate reasons for his determination and that substantial evidence in the record supports the determination.

In a letter to the ALJ on February 29, 2008, plaintiff's counsel referred to Dr. Listerman's second opinion and stated that Dr. Listerman opined plaintiff is able to work at a sedentary level but only on a part-time basis. (R. 35). On March 4, 2008, counsel once again wrote to the ALJ, expressing that Dr. Listerman's second opinion was that plaintiff can perform only sedentary, part-time work. (R. 34). He acknowledged Dr. Listerman's first opinion, but perceived a conflict between the two opinions and sought additional time to secure clarification from Dr. Listerman. Id. Thereafter, counsel faxed Dr. Listerman's third opinion to the ALJ on March 12, 2008. (R. 595-603).

In his decision, the ALJ noted that finding no. 5 (the ALJ's RFC assessment) "is bolstered by the [first] opinion of the claimant's treating physician, Dr. Listerman, who opined that she was able to perform sedentary work." (R. 27). For the next page or more of his decision, the ALJ summarized and discussed Dr. Listerman's three opinions and counsel's perceived internal conflict between opinion one and opinion two. (R. 27-28). The ALJ stated his conclusion regarding the opinions:

> Notwithstanding the fact he is a treating physician,
> the undersigned does not accord Dr. Listerman's third
> opinion controlling weight in this matter. In
> reviewing all of Dr. Listerman's statements, the
> undersigned finds no reference to her only being able
> to perform work on a part-time basis. Even he
> acknowledged that her work as a home health aide was
> precluded by the limitations he provided, but that was
> the only work she had ever performed. The undersigned
> is more persuaded by his initial opinion provided the
> agency as it is reflective of the claimant's functional
> abilities based on other evidence of record. In sum,
> the above residual functional capacity assessment is
> supported by the medical evidence as a whole with
> consideration given to the claimant's credibility as
> stated herein.

(R. 28).

As the Commissioner argues, the decision reveals that the ALJ applied the correct legal standard in evaluating Dr. Listerman's opinions, and substantial evidence in the record supports his conclusion. The court's review of the decision and of each of Dr. Listerman's opinions reveals that the ALJ considered each of the opinions, and his summary of each opinion is a fair summary of the relevant report. The decision reveals that the ALJ accepted Dr. Listerman's first opinion and accorded it substantial weight because it "is reflective of the claimant's functional abilities based on the other evidence of record." (R. 28). He discounted the second, and especially the third opinion because they were not supported by the record evidence, because he saw no reference to a limitation to part-time work, and because Dr. Listerman's opinion acknowledged (as did the ALJ's

RFC assessment) that plaintiff was unable to perform her work as a home health aid.

Contrary to plaintiff's claims, the ALJ did not ignore any of Dr. Listerman's opinions, but considered and summarized each of them. The decision as a whole reveals the weight assigned to each of the opinions, and the ALJ provided specific, legitimate reasons for assigning that weight. Although the ALJ might have credited Dr. Listerman's third opinion, he need not, and did not. He gave specific, legitimate reasons for the weight given, and more is not required. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966); see also, Lax, 489 F.3d at 1084("We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citations, quotations, and brackets omitted). As plaintiff argues, the court may not speculate regarding the ALJ's findings or provide post-hoc rationalization to support the decision. However, as discussed above, a fair reading of the decision reveals the weight accorded Dr. Listerman's opinions, the court need not speculate regarding the decision, and has not relied upon any post-hoc rationalization by the Commissioner's counsel.

**IT IS THEREFORE RECOMMENDED** that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision of the Commissioner.

Copies of this report and recommendation shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within fourteen days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 25th day of February 2010, at Wichita, Kansas.

s:/ Gerald B. Cohn
**GERALD B. COHN**
**United States Magistrate Judge**